UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| WEIGHT INTERVENTION AND | ) | Honorable |
| SURGICAL HEALTHCARE HOLDING, | ) | |
| LLC, et al., | ) | Case No. _____ |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d)(1), AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363, (II) GRANTING ADEQUATE PROTECTION TO LENDER PURSUANT TO 11 U.S.C. §§361, 362 AND 363 (III) MODIFYING AUTOMATIC STAY, (IV) PROVIDING OTHER RELIEF, AND (V) SCHEDULING FINAL HEARING**

Upon the motion (the "**Financing Motion**"), dated April 22, 2005 by Weight Intervention and Surgical Healthcare Holding, LLC ("WISH Holding"), Weight Intervention and Surgical Healthcare Center No. 3, LLC, Weight Intervention and Surgical Healthcare Center No. 4, LLC, Weight Intervention and Surgical Healthcare Center No. 5, LLC, WISH Holding Center No. 6, LLC, WISH Holding Center No. 7, PLLC, WISH Holding Center No. 8, PLLC, WISH Holding Center No. 9, LLC, WISH Holding Center No. 10, PLLC, WISH Holding Center No. 103, LLC, WISH Products, LLC, Midwest Trauma, LLC, Midwest Surgical, LLC and Midwest Surgical Real Estate Holdings, LLC (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503, 507(b) and 1146(c) of the United States Bankruptcy Code, 11 U.S.C. §§101, *et. seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking and requesting, among other things:

(1)     authorization for the Debtors to use Cash Collateral and obtain post-petition financing (collectively, as used herein, the "**DIP Financing**")[1], with post-petition advances not to exceed the final principal amount of $1,000,000 on a revolving basis (the "Maximum Credit Amount") (the actual available principal amount at any time being subject to various conditions precedent as set forth in the DIP Budget, the Existing Loan Documents and this Interim Order, as defined below), from Wish Acquisition, LLC (hereinafter, the "**Lender**");

(2)     the granting of adequate protection to the Lender to secure all of the Debtors' obligations incurred, prior to the filing of the Debtors' chapter 11 petitions herein, under or in connection with the Loan and Security Agreement dated March 2, 2004 (as amended and modified) and the various promissory notes, security documents, guarantees, mortgages and other agreements in connection therewith (collectively, the "Existing Loan Documents") and the Lender's pre-petition liens and security interest created pursuant to the Existing Loan Documents being consensually primed by the DIP Financing;

(3)     authorization for the use by the Debtors of Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code) in which the Lender has a security interest, and the granting of adequate protection to the Lender with respect to, inter alia, such use and disposition of its Cash Collateral;

(4)     pursuant to Bankruptcy Rule 4001, that an interim hearing (hereinafter, the "**Interim Hearing**") on the Financing Motion be held before this Court to consider entry of the proposed interim order annexed to the Financing Motion (the "**Interim Order**")

---

[1]     All capitalized terms used herein but not otherwise defined in this Interim Order shall have the meanings provided for in the Financing Motion.

(a) authorizing the Debtor, on an interim basis, to immediately begin borrowing from the Lender on a revolving basis in compliance with the DIP Budget (as defined below) pending the Final Hearing (as defined below), (b) authorizing the use by the Debtors of Lender's Cash Collateral for the purposes set forth below and in the DIP Budget, and (c) granting to the Lender the adequate protection described herein; and

(5)      that this Court schedule a final hearing (the "**Final Hearing**") to be held approximately 15 days after entry of the Interim Order (subject to the Court's calendar) to consider entry of a Final Order authorizing continued use of Cash Collateral and borrowings under this Interim Order and pursuant to the terms of the DIP Budget on a final basis (the "**Final Order**") pending the Termination Date or a closing of the proposed sale of substantially all the assets of the Debtors to Wish Acquisition, LLC ("Wish Acquisition"), a single purpose acquisition entity owned and controlled by ComVest Investment Partners II LLC and Incubator Investment, LLC, as set forth and contemplated in the Financing Motion.

An Interim Hearing having been held by this Court on April ___, 2005;

Due and appropriate notice of the Financing Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the twenty largest unsecured creditors of each of the Debtors, the Lender, other parties in interest entitled to notice and on the United States Trustee for the Northern District of Illinois; and

Upon the Court's review of the Financing Motion and all the pleadings filed in connection with the Interim Hearing, including responses and objections, if any, to the Financing Motion as well as the Declaration of Richard Meyer in Support of First Day Motions and Applications; having considered all the evidence presented at the Interim Hearing, including the

3

proffer of the testimony by Richard Meyer as the Debtors' Chief Financial Officer, including representations of counsel for the Debtors, the Lender and other parties in interest; and the Court having noted the appearances of all parties in interest present at the Interim Hearing and in the record of the Court; and the objections, if any, to the relief requested in the Financing Motion having been withdrawn, continued to the date of the Final Hearing, resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.  *Jurisdiction, Venue and Statutory Basis.*  This Court has jurisdiction over the Debtors' chapter 11 cases (the "**Cases**") and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.  Consideration of the Financing Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (D), (G), (M) and (O).  The statutory basis for the relief granted herein is pursuant to 11 U.S.C. §§105, 361, 362(d), 363, 364(c), (d), (e), 503, 507(b) and 1146(c).

2.  *Notice.*  The notice given by the Debtors of the Financing Motion, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice thereof and satisfies the requirements of Bankruptcy Rule 4001.

3.  *Debtors' Stipulations.*  Without prejudice to the rights of any other party other than the Debtors (but subject to the limitations thereon contained in Paragraphs 14 and 29 below), the Debtors stipulate and agree that:

(a)  Prior to the Petition Date, to enable the sale of the Debtors' assets as contemplated in these Cases, Lender acquired from American Chartered Bank (the "Bank") substantially all of the pre-petition secured loans and indebtedness owed to the Bank by the

4

Debtors such that as of the Petition Date, Lender holds all of the Bank's claims against the Debtors;

(b)       (i) As of the Petition Date, the Debtors were indebted and liable to the Lender under the Existing Loan Documents, without defense, counterclaim or offset of any kind, in the principal amount of approximately $5,100,000, not including unpaid and accrued interest, costs and professional fees, in respect of (A) pre-petition loans and advances made directly to the Debtors by the Bank pursuant to an Amended and Restated Revolving Note in the maximum principal amount of $3.5 million, and (B) pre-petition loans and advances made to the Debtors by the Bank pursuant to a Term Note in the original principal amount of $2.5 million, together with all unpaid interest, costs, charges, professional fees and obligations incurred in connection therewith, as such notes may have been modified, replaced or restated (collectively, the "**Pre-Petition Debt**"), (ii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or offset rights, whether arising under the Bankruptcy Code or otherwise, against the Lender and its respective predecessors, affiliates, agents, officers, directors, employees and attorneys relating to the Pre-Petition Debt or the Existing Loan Documents; and

(c)       the pre-petition liens and security interests granted pursuant to the Loan and Security Agreement and all other security documents executed by any of the Debtors in favor of the Lender relating to the Existing Loan Documents (the "**Pre-Petition Liens**"), are (i) valid, perfected, enforceable, first-priority liens and security interests in all property of the Debtors as described in such agreement and security documents (the "**Pre-Petition Collateral**"),

(ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, (iii) subject only to (A) the post-petition liens and security interests granted to the Lender pursuant to this Interim Order and any Final Order (the "**DIP Liens**"), and (B) the **Carve Out** or the **Budgeted Professional Fees** (as defined below) as to which the DIP Liens are subject, and (iv) senior to the secured portion of any valid, perfected and unavoidable liens as of the Petition Date under the loan agreements by and between the Debtors and Lasalle Bank National Association (the "LaSalle Claim" and "LaSalle," respectively); provided, however, that the LaSalle Claim shall be satisfied pursuant to the terms set forth and fully disclosed in the Financing Motion and in connection with the Proposed Sale (as defined below).

4.     *Preliminary Findings Regarding the DIP Financing.*

(a)     Good cause has been shown for the entry of this Interim Order.  By way of a separate motion, the Debtors are seeking approval of certain sale and bidding procedures in connection with a proposed sale by the Debtors of substantially all of their assets pursuant to section 363 of the Bankruptcy Code to Wish Acquisition, LLC (the "**Proposed Sale**").  Until the Proposed Sale occurs, the Debtors require the DIP Financing and use of Cash Collateral in connection therewith in order to preserve the going concern value of the Debtors' businesses.

(b)     The Debtors have an immediate need to obtain the DIP Financing and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors and suppliers, and to satisfy other ordinary working capital needs.  The ability of the Debtors to obtain sufficient working capital and liquidity through the use and turnover of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the

6

preservation and maintenance of the going concern values of the Debtors and a successful reorganization or orderly liquidation of the Debtors.

(c)       The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense.  A post-petition credit facility in the amount and on the terms provided by the DIP Financing is unavailable to the Debtors without the Debtors granting to the Lender, subject to the Carve Out or the Budgeted Professional Fees, the DIP Liens and the Superpriority Claims (all as defined below), and the Adequate Protection Liens (as defined below).  Further, the Lender is unwilling to allow the Debtors to use its Cash Collateral on different terms than are contained herein, and there is no basis under which to provide Lender with adequate protection of its interest in such Cash Collateral outside the terms of this Interim Order.

(d)       Based upon the record before the Court and the Debtors' representations, the Court concludes that the terms of the DIP Financing on an interim basis are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration.

(e)       The DIP Financing has been negotiated in good faith and at arm's-length between the Debtors and the Lender, and any advances and loans made to the Debtors by the Lender pursuant to this Interim Order and as described in the Financing Motion shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

(f)       The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing in

7

accordance with this Interim Order and the DIP Budget is therefore in the best interest of the Debtors' estates.

5.    *Authorization of the DIP Financing.*

(a)    The Debtors are hereby authorized to first use Cash Collateral, and, if necessary, borrow from the Lender pursuant to the DIP Budget and this Interim Order, and each of the Debtors are hereby authorized to cross-guaranty such borrowings, on an interim basis up until the time of the Final Hearing, in accordance with the terms of this Interim Order and pursuant to the DIP Budget, which borrowing shall be used, among other things, for the purpose of providing the Debtors operating and working capital pending the Proposed Sale.    Any advances made to the Debtors under the DIP Financing pursuant to this Interim Order shall otherwise be pursuant to the terms and conditions of the Existing Loan Documents and this Interim Order, except that such advances shall bear an interest rate of prime plus 2%.

(b)    In furtherance of the foregoing, each Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents required by the Lender (including, without limitation, the execution of amended loan and security agreements and replacement financing statements), and to pay all professional fees that may be reasonably required or necessary for the Lender's or Debtors' performance of the DIP Financing, including, without limitation, performing all acts required under or in connection with this Interim Order.

(c)    The DIP Financing pursuant to this Interim Order shall constitute a valid and binding obligation of the Debtors, enforceable against each Debtor party thereto in accordance with its terms.    No obligation, payment, transfer or grant of security under this

Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code, or under any applicable law, or subject to any defense, reduction, offset or counterclaim.

(d)     The Debtors are hereby authorized to first use Cash Collateral, and, if necessary, borrow and repay under this Interim Order, subject to the limitations provided in the DIP Budget and this Interim Order up until the time of the Final Hearing.  Upon final approval and entry of the Final Order, provided the DIP Financing has not otherwise been terminated due to the occurrence and continuation of an Event of Default (as defined below), the term of the DIP Financing (other than the Budgeted Professional Fees as defined and set forth in Paragraph 6(b)) will end on the earlier of ninety (90) days after the Petition Date or the date on which on the Debtors close the Proposed Sale and provide the payments to the Lender contemplated in connection therewith (the **"Termination Date"**).  Lender shall not have any obligation or responsibility to monitor the Debtors' use of the DIP Financing and may rely on the Debtors' reporting and representations that the amount of the DIP Financing requested at any time, and the use thereof, is in accordance with the requirements of the DIP Budget and this Interim Order.  So long as the Debtors generate sufficient Cash Collateral to perform their obligations and pay the expenses provided for under the DIP Budget, they shall have no right or obligation to borrow the post-petition advances from the Lender authorized by this Interim Order.

(e)     Provided that the DIP Financing has not otherwise been terminated due to the occurrence and continuation of an Event of Default (as defined below), the DIP Financing (including Lender's Cash Collateral) may be used by the Debtors through and including the Termination Date, for the purposes and in amounts not to exceed those set forth in the budget attached hereto as **Exhibit A** (the **"DIP Budget"**), subject to the permitted variances set forth below, for operating and working capital purposes and for any other expenses approved by the

Court and the Lender in accordance with the terms and conditions of this Interim Order. During the term of this Interim Order (and following any final approval), (i) the Debtors' actual, aggregate expenditures on a cumulative basis from the first week set forth in the DIP Budget through the week during which such expenditures are made shall not, without the express prior written consent of the Lender, be more than five percent (5%) above that projected for such cumulative period in the DIP Budget, and (ii) the Debtors' actual Receipts, on a rolling two (2) week basis as set forth in the assumptions to the DIP Budget, shall not (without the express prior written consent of the Lender) be more than ten percent (10%) below the amount projected. Any failure by the Debtors to comply with the DIP Budget taking into account the variances set forth herein shall be an Event of Default pursuant to Paragraph 24(ii) below. To the extent the DIP Budget or the Existing Loan Documents presently anticipates or contemplates any "out of formula advances" in excess of the variances set forth above (an "**Overadvance**"), the Debtors are only authorized and permitted to obtain such Overadvance so long as the Lender consents. The DIP Budget may be modified and/or extended, but only as agreed and consented to by the Lender or as further allowed in Paragraph 23 of this Interim Order as to a "material change".

     6.    *Superpriority Claims.*

     (a)    Pursuant to section 364(c)(l) of the Bankruptcy Code, all of the Debtors' obligations, indebtedness and liabilities arising under or in respect of the DIP Financing and this Interim Order (collectively, the "**DIP Obligations**") and the Adequate Protection Obligations (as defined below) shall constitute obligations of the Debtors with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims under sections 105, 326, 328, 507(a) or 726 of the Bankruptcy Code (the "**Superpriority Claims**"), subject to the payment of

10

the Carve Out or the Budgeted Professional Fees as provided below. The Lender's Superpriority Claim shall not be payable from the proceeds of the Avoidance Actions (as defined below) or from the proceeds of the Estate Amount (as defined below).

(b) For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, and (ii) $50,000, which amount shall be the only amount to be funded by the Lender after the occurrence and during the continuance of an Event of Default (a "**Carve Out Event**") to pay professional fees or expenses incurred by the Debtors and the Committee, if any, after the Carve Out Event in respect of (A) allowed compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or the Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties (but excluding fees and expenses of third-party professionals employed by such members); *provided, however*, that so long as no Carve Out Event occurs prior to the closing of the Proposed Sale, the Lender shall fund (as part of the DIP Financing) the amount of any professional fees and expenses incurred and allowed by the Bankruptcy Court, not to exceed those amounts provided under the category "Debtors' Professionals" or "Committee Professionals" in the DIP Budget (the "**Budgeted Professional Fees**"). The Budgeted Professional Fees actually incurred by the Debtors' Professionals through the date of any Carve Out Event (and allowed by the Court) shall be funded by the Lender, not to exceed the amounts budgeted for the Debtors' Professionals in the DIP Budget up to that date, less any unapplied pre-petition retainers available to Debtors' Professionals. Nothing herein shall be construed to impair the ability of any party to object to any of the Debtors' or Committee's professional fees,

expenses, reimbursements or other compensation. Payment and funding of any fees or expenses

of the Debtors' or Committee's Professionals in excess of either the Carve Out or the Budgeted

Professional Fees (and subject to the further restrictions on the use of the Carve Out and

Budgeted Professional Fees as contained in Paragraph 14 of this Interim Order) shall not be an

obligation of the Lender. Any professional fees or expenses of the Debtors or the Committee in

the Cases in excess of either the Carve Out or Budgeted Professional Fees shall come from the

Estate Amount, any unencumbered proceeds of the Proposed Sale in excess of the Estate

Amount, or the Avoidance Actions. Lender shall have no obligation to pay the Carve Out in the

absence of a Carve Out Event. A termination of the DIP Financing due to the closing of the

Proposed Sale shall in no event be deemed a Carve Out Event.

      7.    *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the

date of this Interim Order, and continuing from that date forward, and without the necessity of

the execution by the Debtors of additional loan and security agreements or other documentation,

the following additional security interests and liens are hereby granted to the Lender (all property

identified in clauses (a), (b) and (c) below being collectively referred to as the "**DIP

Collateral**"), subject to the payment of the Carve Out or the Budgeted Professional Fees:

      (a)    First Priority Lien on Cash Balances and Unencumbered Property.

Pursuant to section 364(c)(2) of the Bankruptcy Code, the Lender is hereby granted a perfected

first priority senior security interest in and lien upon any and all cash of the Debtors (whether

maintained with the Lender or otherwise) and any investment of the funds contained therein, and

any and all other pre- and post-petition property of the Debtors, whether existing on the Petition

Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected

and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without

limitation, cash collateral, inventory, accounts, accounts receivable, other rights to payment or refund whether arising before or after the Petition Date, contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall, however, exclude the Debtors' claims for causes of action and recoveries under sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, (collectively the "**Avoidance Actions**")  Unencumbered Property shall also exclude $350,000 from the proceeds of the Proposed Sale (the "**Estate Amount**").

(b)      Lender's Priming Lien. Pursuant to section 364(d)(1) of the Bankruptcy Code, the Lender is hereby granted a perfected, first priority, senior security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment or refund, contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries or affiliates, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Petition Debt; *provided, however*, that such security interests and liens shall not extend to the Estate Amount. Such security interests and liens shall be senior in all respects to the Pre-Petition Liens arising from current and future liens of the Lender (including, without limitation, the Adequate Protection Liens granted hereunder), but shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be subordinate only to any valid, perfected and unavoidable security interests of parties other than the Lender arising out of liens, if any, in such property existing immediately prior to

13

the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out

of liens to which the liens of the Lender become subject subsequent to the Petition Date solely as

permitted by section 546(b) of the Bankruptcy Code. Additionally, the Lender's priming liens

shall be subordinate to the secured portion, if any, of any liens and valid, perfected security

interests LaSalle has in any pre-petition property owned by the Debtors, *provided, however,* that

the LaSalle Claim shall be satisfied pursuant to the terms set forth and fully disclosed in the

Financing Motion in connection with the Proposed Sale.

    (c)    <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate

Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security

interest that is avoided and preserved for the benefit of the Debtors and their estates under

section 551 of the Bankruptcy Code which lien, but for such avoidance would not be senior or

equal in priority to the liens granted to the Lender hereunder, or (ii) any liens arising after the

Petition Date including, without limitation, any liens or security interests granted in favor of any

federal, state, municipal, or other governmental unit, commission, board or court for any liability

of the Debtors.

    8.    *Protection of Lender's Rights.*

    (a)    So long as the Lender's commitment to continue allowing the Debtors to

use Cash Collateral and make advances under this Interim Order shall not have been terminated,

the Lender shall take no action to foreclose upon the Pre-Petition Liens pursuant to the Existing

Loan Documents or this Interim Order, or otherwise exercise remedies against the Pre-Petition

Collateral or the DIP Collateral, except to the extent authorized by this Interim Order or separate

order of this Court, provided, however, the Lender shall be entitled at all times prior to the

14

termination of the DIP Financing to continue to receive any excess payments from the Debtors contemplated by Paragraph 10(c) below.

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender to exercise, upon the occurrence and during the continuance of an Event of Default and the giving of the five (5) business days' prior written notice to the Debtors, all rights and remedies against the DIP Collateral and Pre-Petition Collateral provided for in the Existing Loan Documents and this Interim Order. In any hearing after the giving of the aforementioned notice, the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors hereby waive their right to seek to reimpose the automatic stay or obtain other injunctive relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender as set forth in this Interim Order or the Existing Loan Documents. In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Pre-Petition Collateral and DIP Collateral.

(c)     Except as otherwise provided in this Interim Order, the Debtors' right to borrow under this Interim Order or use Cash Collateral (as provided in paragraph 9 below), shall terminate automatically on the Termination Date or upon the termination of the DIP Financing due to the occurrence and continuation of an Event of Default as set forth in Paragraph 24 below. Additionally, except for amounts due in connection with either the Carve Out or the Budgeted Professional Fees (as the case may be), the Lender shall have no obligation to make any advances under the Existing Loan Documents or this Interim Order to pay any unfunded or underfunded item in the DIP Budget following the Termination Date or upon a termination of the

DIP Financing due to the occurrence of an Event of Default, *provided, however*, so long as the DIP Financing has not been terminated due to the occurrence of an Event of Default and a closing of the Proposed Sale occurs, the Lender has agreed to fund the estates at such closing for the actual, accrued and unpaid expenses provided for in and allowed by the DIP Budget (without allowance for any of the applicable variances permitted in Paragraph 5(e) above).

(d)    Nothing herein shall preclude Lender from credit bidding its Pre-Petition Debt and the DIP Obligations pursuant to section 363(k) of the Bankruptcy Code at any sale of the Pre-Petition Collateral or the DIP Collateral.

9.    *Use of Cash Collateral.*  All cash and investment securities of the Debtors, including any proceeds of the Pre-Petition Collateral (including funds on deposit at any bank as of the Petition Date) are cash collateral of the Lender within the meaning of section 363(a) of the Bankruptcy Code.  All such cash and investment securities are referred to herein as "**Cash Collateral.**" Except as otherwise set forth herein, the Debtors are hereby authorized to use all Cash Collateral of the Lender pursuant solely to the DIP Budget and this Interim Order, provided that the Lender is granted and receives adequate protection as hereinafter set forth.

10.    *Adequate Protection.*  The Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interest in the Pre-Petition Collateral, including the Cash Collateral, for any diminution in value of the Lender's interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the use by the Debtors of Cash Collateral and any other Pre-Petition Collateral, the priming of the Lender's security interests and liens in the Pre-Petition Collateral pursuant to this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, except that nothing herein shall be construed to prime the secured portion, if any, of any validly

perfected lien of LaSalle in the Pre-Petition Collateral, *provided, however*, that the LaSalle Claim shall be satisfied pursuant to the terms set forth and fully disclosed in the Financing Motion in connection with the Proposed Sale. As adequate protection, the Lender is hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)      Adequate Protection Liens. The Lender is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of any additional security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the DIP Collateral, subject and subordinate only to (i) the senior security interests and liens granted to the Lender in this Interim Order, (ii) the secured portion, if any, of any validly perfected security interests and liens granted to LaSalle under the Debtors' loan document with LaSalle (*provided, however*, that the LaSalle Claim shall be satisfied pursuant to the terms set forth and fully disclosed in the Financing Motion in connection with the Proposed Sale), (iii) any permitted liens on the DIP Collateral to which the liens granted the Lender are junior, and (iv) the Carve Out or the Budgeted Professional Fees (the "**Adequate Protection Liens**");

(b)      Section 507(b) Claim. The Lender is hereby granted, subject to the payment of the Carve Out or the Budgeted Professional Fees, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the Superpriority Claim held by the Lender in connection with the DIP Financing. The Lender's claim pursuant to section 507(b) shall not be payable from the proceeds of the Avoidance Actions or the Estate Amount in the event the Proposed Sale closes.

(c)      Adequate Protection Payments. As contemplated by the Existing Loan Documents, other provisions of this Interim Order, and section 552(b) of the Bankruptcy Code,

17

the Debtors are authorized and required to direct all collections of Cash Collateral in excess of

amounts to be used as necessary to comply with the DIP Budget, if any, to be transferred to the

Lender, first, to pay and be applied to any obligations due from the Debtors in connection with

the DIP Financing under this Interim Order, and, secondarily, to reduce the Pre-Petition Debt

provided for under the Existing Loan Documents as of the Petition Date.  Any remaining unpaid

balance due and owing the Lender under the Existing Loan Agreements after any partial

satisfaction of the Pre-Petition Debt shall remain as a pre-petition, secured claim of the Lender,

junior only in priority to the DIP Financing and such unavoidable claims that may be senior to

the Pre-Petition Debt, to be satisfied at closing of the Proposed Sale in the manner contemplated

by the Debtors' motion to approve such sale or shall become due and payable in full with the

DIP Financing on the Termination Date.  Notwithstanding any of the foregoing, the Lender's

liens on the Pre-Petition Collateral and the entitlement to the reduction of the Pre-Petition Debt

provided for hereinabove shall remain subject to the procedures for review and challenge by a

Committee in the Cases as set forth in paragraph 14 of this Interim Order.

        (d)        Limited Use of Lender's Cash Collateral.  Subject to the other provisions

of this Interim Order in connection with the DIP Financing, the Debtors are authorized to use all

Cash Collateral collected after the Petition Date, but solely for those purposes as are provided for

in the DIP Budget.  All the proposed expenses and other payments set forth in the DIP Budget

(subject to the variances, reserves and other restrictions on availability set forth in this Interim

Order) shall first be paid by the Debtors from the Cash Collateral and then from available

advances by the Lender under DIP Financing approved by this Interim Order.

        11.     *Reservation of Rights of Lender.*  Under the circumstances and given that the

above-described adequate protection is consistent with the Bankruptcy Code, including

section 506(b) thereof, the Court finds that the adequate protection provided for herein is reasonable and sufficient to protect the security interests of the Lender in the Pre-Petition Collateral. However, this Interim Order shall not preclude the Lender from seeking further or different adequate protection.

    12.    *Perfection of DIP Liens and Adequate Protection Liens.* The Lender is hereby authorized to, but shall not be required to, file or record financing statements, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to them pursuant to this Interim Order. Whether or not the Lender shall, in its sole discretion, chooses to file such financing statements, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, the liens and security interests granted herein shall be deemed valid and perfected at the time and on the date of entry of this Interim Order. The Debtors, upon the request of the Lender, without any further consent of any party, are authorized to take, execute and deliver such instruments to enable the Lender to further perfect, preserve and enforce the security interests and liens granted to the Lender by the Existing Loan Documents and this Interim Order.

    13.    *Preservation of Liens and Rights Granted Under the Interim Order.*

        (a)        No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the Lender shall be granted while any portion of the DIP Obligations (or any refinancing thereof), the commitments thereunder, or the Adequate Protection Obligations remain outstanding. The security interests and liens granted to the Lender hereunder shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code which lien, but for such avoidance would not be senior or equal in priority to the liens granted to the

19

Lender hereunder, or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise. No other claim or lien having a priority senior to or *pari passu* with the Pre-Petition Debt shall be allowed other than pursuant to an order of this Court that is entered following a hearing on no less than 7 business days' prior notice to the Lender, which order finds that the Pre-Petition Liens of the Lender are adequately protected after giving effect to such claim or lien.

(b)      Unless all obligations and indebtedness owing to the Lender under this Interim Order in connection with DIP Obligations and the Adequate Protection Obligations shall theretofore have been paid in full or in the manner agreed to in connection with the Proposed Sale, the Debtors shall not seek, and it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order, to the extent permissible under applicable law, shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) DIP Liens, Adequate Protection Liens, and other security interests and replacement liens granted to the Lender pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such DIP Liens, Adequate Protection Liens and other security interests and replacement liens, shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens and security interests referred to in (i) above.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the

validity of any DIP Obligations and Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Lender and/or the Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the Existing Loan Documents or this Interim Order with respect to any of the Pre-Petition Debt, the DIP Obligations or the Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or DIP Obligations incurred by the Debtors prior to the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted in this Interim Order and/or pursuant to the Existing Loan Documents with respect to all uses of Cash Collateral, the Pre-Petition Debt, the Pre-Petition Collateral, the Pre-Petition Liens, the DIP Obligations, the DIP Liens, the DIP Collateral, the Adequate Protection Obligations, and the Adequate Protection Liens.

(d)   The obligations of the Debtors under this Interim Order and the Existing Loan Documents, unless previously satisfied and paid in full, shall not be discharged by the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived such discharge.

(e)   In no event shall any person or entity who pays (or, through the extension of credit to the Debtors, causes to be paid) any of the DIP Financing be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, Lender by the terms of the Existing Loan Documents or this Interim Order or otherwise, until such time as all of the DIP Financing and other obligations under the Existing Loan Documents are satisfied and paid in full to the Lender.

14.    *Effect of Stipulations on Third Parties.* The stipulations and admissions contained in this Interim Order, including, without limitation, those in paragraph 3 of this Interim Order, shall be immediately binding on the Debtors, and thereafter binding upon all other parties in interest, including the Committee, unless (a) the Committee has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, those in Paragraph 15 below) by no later than the date that is 30 days after the formation of the Committee (or such later date as has been agreed in writing to by the Lender, or ordered by this Court after notice and a hearing), (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Liens, or (ii) otherwise asserting any claims or causes of action against the Lender, and (b) there is a final order or judgment in favor of the Committee in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely filed by a party in interest other than the Debtors by the Termination Date, (x) the Pre-Petition Debt, the Pre-Petition Liens and all related obligations of the Debtors (the **"Pre-Petition Obligations"**) shall constitute allowed claims, not subject to counterclaim, offset, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, not subject to recharacterization, subordination or avoidance, and (z) the Pre-Petition Obligations shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor(s) thereto. If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in Paragraph 3 shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

except to the extent that such findings and admissions were successfully challenged in such adversary proceeding or contested matter.

15.     *Limitation on Use of Financing Proceeds and Collateral.*   Notwithstanding anything herein to the contrary, no borrowings under the DIP Financing, the Cash Collateral, the DIP Collateral, the Carve Out or the Budgeted Professional Fees may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Existing Loan Documents, or the liens or claims granted under this Interim Order, the Existing Loan Documents (including without limitation, the DIP Liens and the Pre-Petition Liens), (b) assert any claims, counterclaims, defenses or causes of action against the Lender or its affiliates, (c) prevent, hinder or otherwise delay the Lender's assertion, enforcement or realization on the Cash Collateral, the Pre-Petition Collateral or the DIP Collateral in accordance with the Existing Loan Documents or this Interim Order, or (d) seek to modify any of the rights granted to the Lender hereunder or under the Existing Loan Documents, in each of the foregoing cases without Lender's prior written consent.   Notwithstanding the foregoing, the Budgeted Professional Fees or the Carve Out may be utilized to the extent necessary to conduct a normal and customary investigation of the validity, extent, enforceability and perfection of the Pre-Petition Liens and the claims of Lender constituting the Pre-Petition Debt in the manner permitted by Paragraph 14 herein.

16.     *No Surcharge Without Consent.*   Except as set forth in the DIP Budget, no costs or expenses of any kind incurred in the Cases by any party, including but not limited to the Debtors and the Committee, shall be imposed upon the Lender or any of the DIP Collateral or the Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the Lender's prior written consent, which may grant or deny such consent in its sole and absolute

discretion, and no such consent shall be implied or imposed based on any action or inaction of the Lender.

17.     *Limited Authorization to Borrow and Use Post-Petition Financing Proceeds.* Notwithstanding anything contained in this Interim Order to the contrary, the Debtors are authorized to use the Cash Collateral, proceeds of the DIP Collateral, and borrow and use proceeds of the DIP Financing up to the limit provided by and solely for the purposes authorized by the DIP Budget and this Interim Order up until the time of the Final Hearing.  Lender has no obligation, and shall not be required, to provide any additional post-petition financing or perform any other obligations except as set forth in this Interim Order.  As a result of the authorization contained herein, no transfer of property of Debtors' estates made to the Lender in accordance with the provisions of this Interim Order shall be avoidable as an unauthorized transfer under section 549 of the Bankruptcy Code.

18.     *Use of Proceeds from DIP Collateral.*  The Debtors may use proceeds of any of the DIP Collateral up to the limit provided for in this Interim Order pursuant to the DIP Budget. The Debtors may not, however, use proceeds of the DIP Collateral in excess of the limit provided in this Interim Order without the prior written consent of Lender, which may grant or deny such consent in its absolute discretion.  Unless otherwise directed by Lender or as required by this Interim Order, the Debtors shall promptly deliver to Lender, as received, all proceeds or payments constituting proceeds of the DIP Collateral (including any proceeds currently in their possession) in which Lender holds a first-priority security interest for application to the DIP Obligations in excess of amounts allowed to be used by the DIP Budget.

19.     *No Additional Duty to Lend or Extend Term.*  Nothing contained in this Interim Order shall be construed to require Lender to make any loan or extension of credit to or for the

24

benefit of the Debtors or their estates other than as expressly provided in this Interim Order, the DIP Budget, and any and all such loans and extensions of credit that Lender shall make shall only be in such amounts and made at such times as Lender may determine the Debtors are allowed pursuant to the DIP Budget and this Interim Order. Notwithstanding the authority and approvals provided for herein, Lender may terminate or extend the term of (or may decline to terminate or extend the term of) the DIP Financing as provided under this Interim Order at any time in accordance with the terms hereof and may waive (or in its absolute discretion, withhold any waiver of) any event of default under the Existing Loan Documents or this Interim Order, all without further notice or order of this Court.

20.    *Payment; No Setoff.* All of the Debtors' obligations in connection with the DIP Financing and this Interim Order shall be due and payable, and shall be paid, on the Termination Date, or on such date the DIP Financing terminates due to the occurrence and continuance of an Event of Default. In no event shall the Debtors be authorized to offset any amount due or allegedly due or owing by Lender to the Debtors against any of the obligations under the Existing Loan Documents without Lender's prior written consent, which may grant or deny such consent in its sole and absolute discretion.

21.    *Debtors' Obligations and Transfers to Lender Not Avoidable.* None of the Debtors' obligations, grants of security interests, liens or superpriority claim status or payments or other transfers to Lender under this Interim Order shall be avoidable or recoverable as a fraudulent, *ultra vires,* or unlawful transfer under any applicable law, including, without limitation, the Bankruptcy Code.

22.    *Fees and Expenses Chargeable to Debtors.* All costs and expenses incurred by Lender in connection with the review, negotiation and/or drafting of the documents in connection

with DIP Financing, or documents in connection with the Proposed Sale (including any amendments thereto), the preservation, protection and enforcement of Lender's rights hereunder, under the Existing Loan Documents or in the collection of the Pre-Petition Debt, the DIP Obligations and Adequate Protection Obligations, including, without limitation, all filing, recording fees and reasonable attorneys' fees and financial advisor fees incurred in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall constitute a part of Debtor's obligations under this Interim Order without any further order of the Court and shall be paid by the Debtors in accordance with the terms of the Existing Loan Documents, this Interim Order and the DIP Budget.

23.    *Amendments or Modifications*.  The Debtors and Lender are hereby authorized to amend or modify the DIP Budget, in accordance with the terms thereof, without further order of this Court on the following conditions:  (i) the amendment or modification must not constitute a material change to the terms of the DIP Budget or this Interim Order (and, for purposes hereof, a "material change" shall mean a change that operates to increase the rate of interest other than as currently provided, add additional specific events of default, increase the aggregate amount of the DIP Financing above the Maximum Credit Amount or enlarge the nature and extent of remedies available to Lender following an event of default), and (ii) copies of the amendment or modification must be served upon counsel for the Debtors, the Committee, the U.S. Trustee and all parties on the Master Service List.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court, upon prior notice and opportunity for hearing as shall be appropriate under the circumstances warranting the material change.

24.    *Events of Default.*   Upon or after the occurrence of (i) the Termination Date,
and/or if (ii) the Debtors fail to duly and punctually observe, perform or discharge any obligation
or duty imposed upon them by the DIP Budget and this Interim Order, including without
limitation, the making of the Adequate Protection Payments in the manner required by Paragraph
10(c) above, (iii) a trustee is appointed in any of the Cases, (iv) any of the Cases are dismissed or
converted to Chapter 7 of the Bankruptcy Code (whether proposed or sought by the Debtors or
any other party), (v) this Interim Order is modified without the prior written consent of Lender,
and (vi) the provisions of this Interim Order are not approved on a final basis in a form
acceptable to the Lender at the Final Hearing (each, an **"Event of Default"**), then, and, in any
such event, Lender shall be fully authorized, in its sole discretion, to terminate the DIP
Financing, and to demand payment and satisfaction of all obligations under this Interim Order.
Following an Event of Default, upon five (5) business days' prior written notice to counsel for
the Debtors, the U.S. Trustee, and counsel for the Committee to allow such parties the
opportunity to seek and obtain a hearing for the sole purpose contemplated in Paragraph 8(b)
above, Lender may enforce the security interests and liens granted under the Existing Loan
Documents or this Interim Order and take all other actions and exercise all other remedies under
the Existing Loan Documents and applicable law that may be necessary or deemed appropriate
by Lender as if these Cases or any superseding Chapter 7 cases were not pending.  Except as
allowed in connection with the Carve Out, in no event shall the Debtors be authorized to use any
proceeds of DIP Collateral or any proceeds of the DIP Financing to pay any cost or expenses of
administration in these Cases or in any superseding Chapter 7 case after the occurrence of an
Event of Default, until such time as all of the obligations under the Existing Loan Documents or
this Interim Order are paid, performed and satisfied in full.

25.    *Inspection Rights.*   Representatives of Lender shall be authorized to visit and
remain on any of the business premises of the Debtors at any time or times to inspect any DIP
Collateral, the Pre-Petition Collateral or other assets of the Debtors to verify or to obtain
supporting details concerning the financial information to be provided to Lenders hereunder or
under the Existing Loan Documents, including without limitation, compliance with the DIP
Budget.

26.    *Survivability; Binding Effect.*   No reorganization plan or other disposition of the
property of the estate proposed by the Debtors, any insider of the Debtors, or any third party
shall modify or abrogate any of the rights and benefits afforded to Lender by this Interim Order
without the prior written consent of Lender, which may grant or deny such consent in its sole and
absolute discretion.  The provisions of this Interim Order shall be binding upon the Debtors and
their buyers, successors and assigns.  In the event that these Cases are dismissed, superseded,
substantively consolidated with another chapter 11 case or entity, or the Debtors merged into any
other entity under any plan of reorganization, neither the entry of this Interim Order, the
dismissal of these Cases, nor such consolidation or merger shall affect the rights of Lender under
this Interim Order, and all of Lender's rights and remedies thereunder and hereunder shall
remain in full force and effect.  As a condition to the obligation of Lender to provide and
continue the DIP Financing after the Interim Hearing, the provisions of this Interim Order
survive and be binding upon any successor trustee appointed in the Cases or any Chapter 7
case(s) to which the Cases may subsequently be converted.

27.    *Remedies Cumulative.*   The rights, remedies, powers and privileges conferred
upon Lender pursuant to this Interim Order shall be in addition to and cumulative with those
contained in the Existing Loan Documents.  Nothing in this Interim Order is intended to limit,

restrict, eliminate or modify any rights or remedies provided to Lender under the Existing Loan Documents.

28.     *No Admissions or Waiver.*  Nothing in this Interim Order shall be deemed to be a waiver by Lender of its right to request any other relief or additional and further protection of its interests in any property of the Debtors or property of the estates, to move for relief from the automatic stay with respect to the Adequate Protection Obligations or the enforcement of its Pre-Petition Liens on the Pre-Petition Collateral, to seek the appointment of a trustee or examiner in the Cases or the dismissal of the Cases, or to request any other relief in this case, nor shall anything in this Interim Order or the Existing Loan Agreements constitute an admission by Lender of the quantity, quality or value of the DIP Collateral or Pre-Petition Collateral or constitute a finding of adequate protection with respect to the interest of Lender in any of the DIP Collateral or Pre-Petition Collateral.   Subject only to the Carve Out or Budgeted Professional Fees, and the Estate Amount, Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the DIP Collateral or Pre-Petition Collateral, to the extent that the Superpriority Claim status afforded by this Interim Order to Lender's interests in any DIP Collateral or Pre-Petition Collateral proves to be inadequate.

29.     *Binding Effect; Successors and Assigns.*  The provisions of this Interim Order shall be binding upon all parties in interest in these Cases, including, without limitation, the Lender and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Lender, the Debtors and their respective successors and assigns.

30.    *Final Hearing and Objections.*  **Notice is hereby given that the Final Hearing on the Financing Motion shall be held before the Honorable _____, United States Bankruptcy Judge, Courtroom _____ at the United States Bankruptcy Court, 219 S. Dearborn, Chicago, Illinois   60604   at   _____   a.m./p.m.   on _____, 2005 (the "Final Hearing").**  If no objection to the Financing Motion or this Interim Order is timely filed and prosecuted at the Final Hearing, then this Interim Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make in the Final Order following the Final Hearing, and that are acceptable to Lender.  If any or all of the provisions of this Interim Order are reversed, modified, or vacated or stayed as the result of any subsequent order of this Court or any other court with jurisdiction over these cases, then, without limiting any provisions hereof, the Debtors' obligations incurred prior to the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to the protections afforded under section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges and benefits, including, without limitation, the security interests, liens and priorities, granted herein with respect to all such obligations.  The Debtors shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee members after the same have been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file a written objection; which objections shall be served so to be received no later than April ____, 2005 at 5:00 p.m.   (Eastern   Time)   upon   (a) Edward   J.   Green   and   Geoffrey   S. Goodman (EGreen@foley.com), Foley & Lardner LLP, Proposed Counsel for the Debtors, 321 North

Clark, Suite 2800, Chicago, IL  60610, Telephone: (312) 832-4375, Facsimile (312) 832-4700;

and (b) Brian K. Gart, Esq. (GartB@GTlaw.com), Greenberg Traurig, P.A., Attorneys for the

Lender, 401 East Las Olas Boulevard, Suite 2000, Fort Lauderdale, FL  33301, Telephone: (954)

765-0500, Facsimile: (954) 754-1477; David W. Baddley, Esq., 77 West Wacker Drive, Suite

2500, Chicago, Illinois 60601, Telephone: (312) 456-8400, Facsimile: (312) 456-8435; and

(c) the Office of the United States Trustee for the Northern District of Illinois, and shall be filed

with the Clerk of the United States Bankruptcy Court, Northern District of Illinois.

Dated: _____, 2005

_____

UNITED STATES BANKRUPTCY JUDGE

fl:\61\55194\v07\4/22/05\87627.010100

Consolidated Welsh Holdings, LLC
Cash Flow Forecast
For the thirteen weeks ended July 15, 2005
($000s)



EXHIBIT

| | Forecasted 13 Week Total |
|---|---|
| **Receipts:** | |
| Receipts for Post-Petition Receivables | $1,461,817 |
| Receipts for Pre-Petition Receivables | $983,400 |
| Marketing Payments from Hospitals | $0 |
| Rental Income | $78,381 |
| Trauma One Management Fee | $185,602 |
| **Total Receipts** | $2,352,060 |
| **Disbursements:** | |
| **Operating Disbursements:** | |
| Physician Payroll | 789,775 |
| Clinic Payroll | 615,223 |
| Corporate Payroll | 319,202 |
| Rent | 216,783 |
| Employee Benefits | 149,000 |
| Property and Liability Insurance | 514,414 |
| Advertising/Marketing | 171,000 |
| Lab Costs | 65,000 |
| Outside Medical Professionals | 199,125 |
| Office Expense | 65,000 |
| Utilities | 48,100 |
| Product... (patient equipment, etc.) | 10,000 |
| Other Corporate Costs | 26,000 |
| Capital Lease Obligations | 61,452 |
| Debtors Professionals: | |
| Foley & Lardner | 143,000 |
| DSI | 8,769 |
| Corporate Professionals | 20,000 |
| Bankruptcy Advertising Costs | 20,000 |
| **Total Operating Disbursements** | $3,253,085 |
| **Financing Disbursements:** | |
| Interest and Fees | $203,194 |
| **Total Financing Disbursements** | $203,194 |
| **Total Disbursements** | $3,456,259 |
| Cash Collected | $2,352,060 |
| Total Disbursements | ($3,253,085) |
| Net Financing Disbursements | ($203,194) |
| Beginning Cash Balance | $110,395 |
| Borrowings/(Paydown) | $963,244 |
| **DIP Outstanding:** | |
| Beginning Cash Balance | $0 |
| DIP Loan | |